O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re Bruce G. Fagel, Debtor<br>In Re Bruce G. Fagel, A Law Corporaton, Debtor | Case No. CV 07-02324 DDP<br><br>[Bankruptcy Nos. LA 99-16480 SB & LA 99-16581 SB] |
| Ruby Morales, a minor and incompetent, by and through her Guardian ad Litem, Denielle Morales, | [Adversary Case No. LA 01-01710-SB] |
| Plaintiff,<br>v.<br>Bruce G. Fagel, A Law Corporaton; and Bruce G. Fagel, individually,<br>Defendants. | **Order (1) Affirming Judgment of the Bankruptcy Court; (2) Affirming Bankruptcy Court's Denial of Defendants' Motion for Order Requiring Disgorgement of "Excess Payment"** |

This matter comes before the Court on appeal by Ruby Morales, by and through her Guardian ad Litem, Denielle Morales ("Morales") from the bankruptcy court's judgment determining damages for attorney Bruce G. Fagel's professional malpractice.  Bruce G. Fagel, in his individual capacity, and Bruce G. Fagel, A Law Corporation (together "Fagel"), cross-appealed from the bankruptcy court's order denying Fagel's motion for an order requiring Morales

to disgorge "excess payment" pursuant to the parties' 2002 stipulation. For the reasons set forth below, the Court AFFIRMS (1) the bankruptcy court's damages judgment; and (2) the bankruptcy court's order denying Fagel's request for an order requiring disgorgement of excess payment.

**I.   Background**

This case has a long and complex procedural history. It has come before this Court on appeal on three prior occasions, and the proceedings before the bankruptcy court began more than ten years ago (the origins of the parties' dispute lie even deeper in the past). The following summary is drawn, in large part, from the Court's previous orders.

In 1991, in the course of receiving medical care at UCLA Medical Center, Ruby Morales suffered severe brain damage from oxygen deprivation. She is now a spastic quadriplegic and requires 24-hour nursing care. On September 11, 1991, Fagel, an attorney specializing in medical malpractice claims, filed a malpractice complaint against the Regents of the University of California in state court on Ruby's behalf. Counsel for the Regents – attorney David O'Keefe – was concurrently defending Fagel in a separate, unrelated legal malpractice action. Fagel did not inform the Morales family that O'Keefe was representing him in another matter.

Fagel negotiated a settlement with the Regents and filed a petition in the state court proceeding requesting an order approving the settlement as a minor's compromise of a disputed claim. Prior to the hearing on the petition, Fagel met with the Morales family and discussed the terms of the settlement. He did not, however, disclose certain material conditions. Some time

after the state court adopted an order enforcing the settlement, Denielle Morales filed a state court action against Fagel for professional negligence, fraud, breach of fiduciary duties, breach of contract, and infliction of emotional distress.  In November 1998, the trial court in legal malpractice action entered judgment on the jury verdict in favor of the Morales family, awarding $15,012,240.68 to Ruby and $250,000 to Robert and Denielle Morales. On February 8, 1999, Fagel filed a notice of appeal from the judgment.

On February 19, 1999, Fagel filed for bankruptcy under Chapter 11 of the United States Code.  In June 1999, Ruby and her parents filed claims in Fagel's bankruptcy proceeding.

In August 2000, the California Court of Appeals affirmed the jury's verdict with respect to Fagel's liability to Ruby, but reversed the judgment of liability as to Robert and Denielle Morales, and remanded for a recalculation of damages. Subsequently, the parties in the bankruptcy proceeding agreed to convert the matter into an adversary proceeding for a rendition of final judgment on the malpractice damages issue.  In April 2002, the bankruptcy court awarded Ruby damages totaling $4,155,801, and ordered Fagel to pay Ruby's attorney's fees and costs and to purchase a life insurance annuity in Ruby's name.

On May 1, 2002, Fagel and Ruby entered into a stipulation regarding: (1) dismissal of Chapter 11 cases; (2) preservation of appellate rights; (3) distribution to creditors; and (4) related matters.  Pursuant to the stipulation, Fagel paid Ruby $6,000,000 in exchange for Ruby's consent to the dismissal of the Chapter 11 claims filed in June 1999.  Both parties, however, reserved their

3

appellate rights regarding the bankruptcy court's rulings on a range of issues (including the size of the malpractice damages award). The bankruptcy court entered an order approving the stipulation and dismissing the Chapter 11 cases on May 28, 2002.

In June 2002, a San Diego County probate court authorized the creation of a trust for Ruby's support, with Union Bank serving as trustee. The funds in the trust were obtained from the $6,000,000 payment Fagel made pursuant to the parties' May 2002 stipulation.

Fagel appealed the bankruptcy court's April 2002 damages award, and Morales cross-appealed. On June 12, 2003, this Court reversed and remanded, instructing the bankruptcy court to make specific factual findings and to recalculate the damages award in accordance with those findings.

On September 7, 2004, after another round of briefing and oral argument, the bankruptcy court found that Ruby was entitled to a total damages award of $3,464,279. Ruby subsequently appealed the judgment and Fagel cross-appealed. The Court again reversed and remanded, instructing the bankruptcy court to address three issues: (1) whether the three per cent (3%) discount rate that the bankruptcy court utilized in calculating the damages award was the appropriate rate; (2) whether the bankruptcy court calculated post-judgment interest properly; and (3) whether the bankruptcy court's award of compound interest was proper.

Following the bankruptcy court's September 7, 2004 ruling on damages (and while the appeal of that award was pending), Fagel filed a motion seeking to compel Ruby and Union Bank to return the difference (plus interest) between the $6,000,000 that had been paid pursuant to the 2002 stipulation and the bankruptcy court's

4

September 2004 damages award.  On April 4, 2005, the bankruptcy court denied Fagel's motion, concluding that "said motion is premature in light of the pendency of the appeals by both Fagel and Ruby Morales. . . ."

On April 14, 2005, Fagel filed a "Notice of Appeal of Order Denying Fagel Motion to Enforce Stipulated Order, Require Plaintiff and Transferees to Disgorge Excess Payment, and Enter Judgment in Favor of Fagel Defendants."  The appeal was transferred from the Bankruptcy Appellate Panel to this Court.  The Court denied Morales's motion to dismiss the appeal, but did not issue a ruling reversing the bankruptcy court's order denying Fagel's disgorgement request (the appeal was rendered moot when the Court vacated the September 7, 2004 damages award and remanded the case to the bankruptcy court).

On September 5, 2005, following a one-day trial on the remanded damages issues, the bankruptcy court entered an order adopting the relevant discount rates, and directing the parties to submit a schedule of damages based on those rates.  One week later, Fagel filed a schedule of damages proposing a total damages figure of $2,687,298.  Fagel also requested entry of a "net judgment" in his favor, reasoning that the damages award subtracted from the $6 million that he paid to Morales pursuant to the 2002 stipulation amounted to an excess payment of over $3 million.  On October 30, 2006, the bankruptcy court granted a net judgment in favor of Fagel, based on the figures that Fagel submitted.

Morales filed a motion to alter or amend the judgment, and the bankruptcy court granted the motion on December 5, 2006.  Morales then filed a schedule of damages proposing a damages figure of

$4,242,588, and Fagel filed an amended schedule of damages (in two forms, one in the form of a net judgment in favor of Fagel, and the other in the form of a judgment in favor of Morales).  Both of Fagel's proposed judgments reflected a total malpractice damages award of $2,966,725.

On January 17, 2007, the bankruptcy court issued an "Amended Judgment" determining Morales's damages to be $2,966,725, and providing for a net judgment in favor of Fagel in the amount of $3,033,275, plus interest from June 10, 2002.  On January 26, 2007, Morales filed a motion to amend or alter the Amended Judgment, challenging, in relevant part, the bankruptcy court's decision to enter judgment in the form of a net judgment in favor of Fagel.  On February 27, 2007, after holding a hearing on Morales's motion, the bankruptcy court vacated the Amended Judgment, and entered a new judgment, in favor of Morales, awarding her damages in the amount of $2,966,725.  Morales filed a notice of appeal from the judgment on March 9, 2007.

Fagel then filed a "Motion for Order 1) Enforcing Stipulated Order and 2) Requiring Plaintiff and Her Transferees to Disgorge 'Excess Payment' Pursuant to Stipulated Order."  On June 26, 2007, the bankruptcy court held a hearing on Fagel's motion.  Judge Bufford considered Fagel's argument that the parties' 2002 stipulation required immediate disgorgement of excess payment (i.e., the damages award subtracted from the $6 million that Fagel paid to Morales pursuant to the 2002 stipulation), and concluded that Fagel's motion was premature.  In reaching his conclusion, Judge Bufford observed that issues in the litigation remain "on appeal," and under the terms of the stipulation, all appeals

6

related to the damages award must be concluded prior to disgorgement of any excess payment.

Fagel timely cross-appealed the order denying his disgorgement motion. The Court set a consolidated briefing schedule so that both appeals could be heard together. Morales filed her opening brief on November 6, 2007. Fagel filed his reply and opening brief in the cross-appeal on December 17, 2007. Appellant filed her reply in the cross-appeal on May 9, 2008.

## II. Legal Standard

On appeal, the bankruptcy court's findings of fact are reviewed under a clearly erroneous standard, and its conclusions of law are reviewed de novo. <u>In re Tucson Estates, Inc.</u>, 912 F.2d 1162, 1166 (9th Cir. 1990).

## III. Analysis

A. Morales's Appeal

Morales appeals from the bankruptcy court's February 2007 judgment determining the amount of damages arising from Fagel's legal malpractice. She contends that the bankruptcy court's $2,966,725 damages figure is not supported by the evidence in the record, and accordingly, that Judge Bufford abused his discretion in entering judgment in that amount. Upon reviewing the record of the proceedings below, the Court is persuaded that Morales waived her challenge to the damages figure.

On February 27, 2007, at the hearing on Morales's second (and final) motion to alter or amend the judgment, counsel for Morales engaged in the following colloquy with Judge Bufford:

>   COURT: And your position today is what is the number that should be –

7

> COUNSEL: It's Fagel's number. The Court has already ruled on that. And its Fagel's numbers, which is $2,966,725. Those are the numbers that Mr. Fagel submitted and this Court accepted.
>
> COURT: That's $2,966,721?
>
> COUNSEL: Seven hundred twenty-five.
>
> COURT: Seven hundred and twenty-five.
>
> COUNSEL: And that's the judgment that this Court ordered, and that's the judgment that should be entered. We're not arguing about that because we believe that should be honored. That's the Court's order. Those are Fagel's proposed orders. And that's the judgment – the vanilla judgment that Ms. Ruby Morales is entitled to. And with that, your honor, we submit.

(Excerpt's of Record ("ER") 1112-13.)

After asking the bankruptcy court at the final hearing on the matter to enter a damages judgment of $2,966,725, Morales cannot now challenge that figure as unsupported by the evidence. At the hearing Morales was, of course, focused on persuading the bankruptcy court to reconsider its earlier decision entering a net judgment in Fagel's favor. The thrust of the argument at the hearing focused on whether the parties' 2002 stipulation required the bankruptcy court to enter a judgment requiring Morales to pay Fagel approximately $3 million (i.e., the prior $6 million settlement figure minus the bankruptcy court's approximately $3 million damages award). Nonetheless, Morales had an opportunity to dispute the merits of the bankruptcy court's damages figure and she declined to do so. As a result, the Court entered its final judgment with the apparent consent (as to the damages figure) of both parties. See <u>BankAmerica Pension Plan v. McMath</u>, 206 F.3d 821, 826 (9th Cir. 2000) ("A party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an

issue and instead chooses a position that removes the issue from the case."). Accordingly, the Court affirms the bankruptcy court's damages determination.

B. Fagel's Cross-appeal

Fagel cross-appeals from the bankruptcy court's order denying his request for entry of a "net judgment" that would result in disgorgement of approximately $3 million out of the $6 million that Fagel paid to Morales pursuant to the parties' 2002 stipulation.

The Court agrees with the bankruptcy court that Fagel's motion for disgorgement is premature.

Fagel relies on Paragraph J of the 2002 stipulation, which states

> If, as and when, as a consequence of the final disposition of the aforementioned appeals, it is determined that Morales was entitled to recover from Debtors [Fagel and his corporation] less than the Six Million Dollars ($6,000,000) paid in accordance with Paragraph E hereof (the "Excess Payment"), Morales, or any successor in interest of and to Morales . . . shall (I) immediately pay such excess payment, in cash, in full, to Debtors. . . .

(ER 736-37.) Fagel contends that the stipulation specifically identifies several appeals that were then pending (the then pending appeal of the bankruptcy court's 2002 damages award, for example), and thus, those appeals must be the "aforementioned appeals" referenced in Paragraph J. Because those specifically enumerated appeals have concluded, Fagel argues, Morales must immediately return the difference between the $6 million payment and the bankruptcy court's February 2007 damages award.

The Court disagrees. Taken as a whole, the stipulation clearly provides that any entitlement to disgorgement of excess payment would not accrue until after the conclusion of all appeals

9

related to the bankruptcy court's determination of Morales's damages award. Put differently, Fagel's right to collect any "excess payment" from Morales or her transferees requires a final, post-appeal determination of how much Fagel was obligated to pay Morales in the first place. Only then can the proper amount of "excess payment" be calculated and, subsequently, recovered.

The Court's understanding of the stipulation flows from the document's plain language. Paragraph E, for example, states that the $6 million settlement payment would be conferred without prejudice to "all rights of appeal of [Fagel] and Morales, respectively, with respect to the Damages Award, the Attorneys Fees Award, the Costs Award, the Judgment, the Appeal, the Cross Appeal, the Approval Order, the Approval Order Appeal, the Supplemental Structured Payment Request, <u>and various matters and issues pertaining thereto</u>." (ER 734 (emphasis added).) Similarly, Paragraph H of the stipulation provides that "[u]ntil such time as all appeals in respect of the Damages Award, the Attorneys Fees Award, the Costs Award, the Judgment, the Appeal, the Cross Appeal, the Approval Order, the Approval Order Appeal, the Structured Payment Request, and various matters and issues pertaining thereto have been finally resolved, [Fagel] shall maintain the sum of $667,303.33" in a confirmation deposit, to be paid to Morales if the ultimate damages award exceeded the $6 million settlement payment. (ER 735.) Both Paragraphs signal an intent to reserve repayment of settlement funds (or any obligation to increase the

damages payment beyond the settlement amount) until after all appeals related to the damages award have been resolved.[1]

Because Morales's appeal of the February 2007 damages award was pending at the time Fagel filed his motion seeking disgorgement of excess payment, the bankruptcy court did not err in concluding that the motion was premature. Accordingly, the Court affirms the bankruptcy court's order denying the motion.

**IV. Conclusion**

For the reasons set forth above, the Court AFFIRMS (1) the bankruptcy court's damages judgment; and (2) the bankruptcy court's order denying Fagel's motion for disgorgement. In addition the REQUEST(S) [docket numbers 27, 28 and 37] are vacated.

IT IS SO ORDERED.

Dated: June 17, 2010

DEAN D. PREGERSON
United States District Judge

---

[1] Fagel relies heavily on dicta in the Court's 2005 order denying Morales's motion to dismiss a prior appeal to suggest that the Court has already accepted his construction of the 2002 stipulation. In the 2005 order, the Court implied that the stipulation could be construed as requiring disgorgement upon resolution of the specific identified appeals in the 2002 stipulation. The Court did not, however, reverse Judge Bufford's conclusion that Fagel's 2005 disgorgement motion was premature; indeed, the Court did not reach the issue. With the issue now squarely before it, the Court concludes that Fagel is not entitled to disgorgement until after the conclusion of all appeals <u>in this litigation</u>. The current appeal before the Court is a component of the ongoing adversary proceeding involving Morales and Fagel, and thus, pursuant to the parties' stipulation, Fagel's motion for disgorgement is premature.

11